Andrew CATE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9308–CR–920.

Supreme Court of Indiana.

Dec. 14, 1994.

Howard Howe, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Andrew Cate was found guilty but mentally ill of murdering his two-year-old daughter, for which he received the maximum sixty-year prison sentence. There is no question that he committed the heinous act. He is also obviously suffering from some degree of mental incapacity.

On direct appeal, Cate challenges his conviction on three grounds. First, Cate asserts that, in the face of "uncontroverted" expert testimony showing his insanity at the time of the murder, the jury's verdict is contrary to law. Second, he claims that the State did not rebut the evidence of his insanity, thereby failing to prove he had the requisite state of mind to be convicted of the offense. Finally, he challenges the introduction of his ex-wife's testimony about communications between them while they were still married. The first issue is an extension of the second, both of which constitute a challenge to the sufficiency of the evidence upon which Cate's guilty but mentally ill conviction was based.

### I. Cate's Insanity Defense

Persons who cannot appreciate the wrongfulness of their conduct due to some mental disease or defect cannot be held responsible when they break the law. Ind. Code Ann. § 35–41–3–6(a) (West 1986). Still, not all mental conditions are serious enough to relieve one of criminal responsibility. *Lyon v. State* (1993), Ind., 608 N.E.2d 1368, 1369 ("Mental disorder alone is not enough to excuse a defendant for the perpetration of a crime."). The Indiana Code defines "mental disease or defect" as "a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested only by repeated unlawful or antisocial conduct." Ind.Code Ann. § 35–41–3–6(b) (West 1986).

According to Ind.Code § 35–41–4–1, "the burden of proof is on the defendant to establish the defense of insanity (IC 35–41–3–6) by a preponderance of the evidence." In this case, the jury was not satisfied that Cate proved his insanity. Most defendants claiming insanity attempt to satisfy their evidentiary burden by introducing expert testimony, and Cate calls our attention to the unanimous testimony of five doctors supporting his insanity defense. Indeed, each of the mental health professionals who examined Cate, including the State's expert and the court-appointed psychiatrist, agreed that Cate was legally insane at the time he killed his daughter. While such opinions provide a strong justification for raising the insanity defense, we have never held expert testimony to be conclusive. *See, e.g., Mayes v. State* (1982), Ind., 440 N.E.2d 678. Rather, as we observed in *Turner v. State* (1981), Ind., 428 N.E.2d 1244, the question is whether the jury's rejection of Cate's insanity defense "was contrary to all the evidence and hence *contrary to law.*" *Id.* at 1246 (emphasis in original).

While the expert testimony was unanimous, the psychiatrists' assertions about Cate's legal insanity were hardly uncontro-

verted. The record contains evidence of his lucidity after arrest, demonstrating both an awareness of what he had just done and his deliberation in accomplishing the killing. Furthermore, despite his subsequent claims that he was mimicking the biblical story of Abraham's willingness to sacrifice his son Isaac, Cate had previously denied such a motivation when asked by a coworker within a week of the murder.

Each of the psychiatrists, of course, evaluated Cate after the incident, based on his representations about his motivation on the evening in question. The jurors may have agreed with the prosecution's suggestion that Cate had a strong incentive to lie and could have told his doctors a tall tale to avoid a guilty verdict. We neither know nor can accurately reconstruct the exact reasons Cate was found to be guilty but mentally ill instead of not guilty by reason of insanity, but we find at least the minimal evidentiary justification for the jury to find him sane enough to be held legally accountable for his actions. The jury's decision to reject Cate's insanity defense was not contrary to law.

### II. Sufficiency of the Evidence

■ Unlike a defense based on a claim of the defendant's insanity, it is the State's burden in a criminal prosecution to demonstrate the defendant's culpability by proving the level of mens rea prescribed by the criminal statute. Murder convictions must be predicated on knowing or intentional conduct. Still, the State need not disprove mental illness to prove that Cate acted knowingly or intentionally. To hold otherwise would shift the burden of proof for an insanity defense. See *Lyon,* 608 N.E.2d at 1370. All the State need show on appeal is some evidence from which the jury could conclude beyond a reasonable doubt that Cate knowingly or intentionally killed his daughter.

■ The evidence of Cate's intent when he fired ten bullets into Christina was sufficient to support the conviction. A jury may infer intent to kill from the deliberate act of using a deadly weapon against another in a manner likely to cause death or serious injury. *An-*

*thony v. State* (1980), 274 Ind. 206, 409 N.E.2d 632. In addition, testimony at trial revealed that Cate expressed his intent to harm Christina just prior to her murder, and that he understood immediately afterwards that shooting her repeatedly as he did would likely kill her. On these facts, the jury could find incredible his assertions of having acted in accordance with an unshakable faith in divine intervention.*

### III. Marital Privilege

Finally, we turn to the claim that the admission of testimony from Lori Cate, the appellant's former wife, was error. Cate did not object to any of this testimony at trial, and thus the issue is not preserved for review.

Accordingly, we affirm Cate's conviction.

GIVAN, DICKSON and SULLIVAN, JJ., concur.

DeBRULER, concurs in result without separate opinion.

---

* According to most biblical accounts Abraham fully intended to slay his son Isaac as a demonstration of his faith. In the story God intervenes at the last moment to spare Isaac's life, but only after it was clear Abraham was going ahead with the sacrifice.