Istvan L. BARANY, Appellant,

v.

STATE of Indiana, Appellee.

No. 92S00–9305–CR–571.

Supreme Court of Indiana.

Nov. 16, 1995.

Linda M. Wagoner, Fort Wayne, for appellant.

Pamela Carter, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, for appellee.

## ON DIRECT APPEAL

DeBRULER, Justice.

Appellant was charged with murder. Ind. Code Ann. § 35–42–1–1 (West Supp.1994). A jury found him guilty but mentally ill. Ind.Code Ann. § 35–36–2–3 (West 1986). This case comes to us on direct appeal. Ind.Appellate Rule 4(A)(7). He received a sixty-year sentence. Appellant raises the following issues:

1) whether the verdict is contrary to law because the evidence was overwhelming and uncontroverted that appellant was insane at the time of the killing;

2) whether the jury instructions were improper;

3) whether appellant was denied the effective assistance of counsel; and

4) whether appellant's sentence was improperly enhanced.

### Facts

Appellant and the victim, Judith Tomlinson, shared a house on Shriner Lake in Whitley County. They had lived together for nearly a decade, in Georgia as well as Indiana. On May 7, 1992, appellant visited his next-door neighbors at Shriner Lake, Steve Waikel and Marla Pfeiffer. Appellant discussed religion in highly abstract, incomprehensible terms and drew some bizarre pictures on a notepad, while telling Pfeiffer that these pictures revealed important relationships in the universe. Waikel attempted to fish on the nearby pier. Appellant accompanied Waikel and continued to offer religious commentary until Waikel went back inside his home to be with Pfeiffer.

A few minutes later, Waikel told Pfeiffer to look at appellant, who was naked and sitting "Indian style" on the end of the pier. They saw Tomlinson come out of the house that she and appellant shared and place a blanket on him. Shortly thereafter, Waikel and Pfeiffer saw the victim run back into the house. Unbeknownst to them, appellant had bitten off Tomlinson's finger and swallowed it. Appellant walked into the water, left the water, and went into the house.

Once inside the house, appellant discovered Tomlinson talking on the telephone. He

obtained a handgun from behind the headboard and shot her eight times. He then used a splitting maul to destroy the television, microwave oven, and VCR. He also struck the victim's head and chest with the maul. He then dumped a bag of waste from the vacuum cleaner over the body.

Appellant returned to Waikel and Pfeiffer's home. He had a "distant stare" in his eyes and blood dripping from his mouth. Appellant told Waikel that he had swallowed Tomlinson's finger because it contained an "evil worm." He told Waikel that he had killed "Jude" and that Waikel should kill Pfeiffer because "all women are evil." Appellant told Waikel to go into the house to see the victim. Waikel did and saw that she was dead, with the splitting maul still stuck in her head.

Waikel returned to his home and told Pfeiffer and Valerie Davis, another woman from the neighborhood, to stay inside and call the police. A few minutes later, a police car approached the area. Appellant, still naked and screaming, ran toward the police car, collided with it, and rolled over the hood and off the driver's side of the car. Appellant began fighting with the car's occupant, Deputy Sheriff Engle.

With assistance from a two scuba divers who had been training in the lake, Engle subdued appellant by cuffing his wrists and ankles. Appellant continued to struggle and kick the police car's doors and windows. Finally, the deputy was forced to bind appellant's wrists and ankles together to prevent serious damage to the car and appellant.

The police took appellant to the hospital. In accordance with a search warrant, he was forced to vomit so that the victim's finger could be retrieved. He was catherized and a urine sample was obtained; that sample tested positive for cannabanoids (indicating marijuana use) but negative for alcohol and other drugs. Appellant was extremely uncomfortable and begged to be untied. The police and hospital employees ignored his crying, screaming, and pleading.

Later that day, police officers took appellant to the police station in Columbia City. They unshackled him and placed him in the "rubber room." Approximately three hours later, officers escorted him to the shower where he showered and dressed. He gave a videotaped statement to Detective Stotts of the Indiana State Police. In the statement appellant admitted killing his "common-law wife," the victim.

He remained in the rubber room for the next few days. He sat covered with a blanket, chanted Bible verses, and occasionally stood to preach to an invisible crowd of people. When a female confinement officer opened the cell door, he apologized to her and to "all women." He tore pages from the Bible and stuffed them down the drain. He repeatedly asked those who checked on him if they were "God." He gnawed at the tattoo on his arm and attempted to bite off one of his fingers.

The prosecutor filed murder charges against appellant. Appellant responded by raising the defense of insanity. Three disinterested psychiatrists were appointed to examine appellant. They all concluded that, at the time of the murder, appellant was incapable of appreciating the wrongfulness of his conduct and unable to conform his behavior to the requirements of the law.

Because the facts at trial had been stipulated, the State's case required approximately five minutes. The defense attempted to establish appellant's insanity at the time of the killing. The jury returned a verdict of "guilty but mentally ill." The trial judge, citing lack of remorse, prior criminal record, and the brutality of the crime as aggravating factors, gave appellant the maximum sentence available—sixty years.

## I

■ Appellant claims that the verdict was contrary to law because the evidence of his insanity was overwhelming and uncontroverted.

■ The determination of sanity is a question for the trier of fact. The jury is free to disregard the testimony of experts and rely upon that of lay witnesses. *Campbell v. State* (1989), Ind., 536 N.E.2d 285. Accordingly, the standard of review is a deferential one. We will reverse the trier of

fact's determination "only where the evidence is without conflict and leads to but one conclusion and the trier of fact has reached an opposite conclusion...." *Green v. State* (1984), Ind., 469 N.E.2d 1169, 1171.

In this case, the medical experts were unanimous in concluding that appellant was insane at the time of the killing. However, the State offered testimony from several lay witnesses that indicated that appellant was sane. Indiana State Police Detective Stotts described how, only a few hours after the crime, appellant talked about the victim's complaints and nagging. One of appellant's friends, Chris Brockman, testified as to unusual topics of conversation, such as conspiracies, but indicated that appellant "seemed O.K." In a conversation with his sister, appellant indicated that he believed that the victim was calling the police when he killed her. The jury could have decided that this testimony about appellant's behavior was more indicative of his actual mental health at the time of the killing than medical examinations conducted four weeks after the arrest. Given this conflicting evidence, we will not invade the jury's fact-finding province.

## II

Appellant claims that the trial court gave erroneous instructions to the jury.

■ Appellant first claims that the jury was misinformed regarding the determination of insanity. Appellant refers to Instruction No. 13, which reads as follows:

In considering the issue of insanity, you may consider the evidence that has been admitted as to the defendant's mental condition before and after the offense charged, as well as the evidence as to the defendant's mental condition *on that date.* The evidence as to the defendant's mental condition before and after *that date* was admitted solely for the purpose of assisting you to determine the defendant's condition *on the date of the alleged offense.*

(emphasis added). Appellant argues that since the jury had been instructed that appellant had the burden of proving by a preponderance of evidence that he was not responsible by reason of insanity at the time of

the offense, the instruction should have used the phrase "at the time of the offense" instead of the phrase "on that date."

Appellant analyzes the differences between "at the time of the offense" and "on that date" and concludes that, since there was no evidence of sanity at the time of the offense, the jury must have been misled into believing that they need not determine his mental condition at the exact time of the killing. However, all three psychiatrists directed their testimony to appellant's condition at the time of the killing and appellant's insanity defense was premised solely on his behavior at the time of that killing. Thus, there is no reason to believe that the jury misapplied the law.

■ In addition, appellant concedes that no objection to this instruction was offered at trial. Such a procedural default ordinarily renders appellate review unavailable. He alleges, however, that the giving of this instruction was fundamental error requiring reversal. In order for a mistake to constitute fundamental error, it must be so prejudicial to the rights of a defendant as to make a fair trial impossible. *Howey v. State* (1990), Ind., 557 N.E.2d 1326. However, we find no error, and therefore, *ipso facto*, no fundamental error.

■ Appellant claims that the court's instruction misled the jury as to the resulting post-trial procedures. He bases this claim on the court's having given Instruction No. 21, which read as follows:

Whenever a defendant is found guilty but mentally ill at the time of the crime, the Court shall sentence the defendant in the same manner as a defendant found guilty of the offense.

At the Department of Corrections, the defendant, found guilty but mentally ill, shall be further evaluated and treated as is psychiatrically indicated for his mental illness.

Appellant claims that this instruction, when read with his requested Instruction No. 20, told the jury that appellant would only receive required psychiatric care if he was found guilty but mentally ill. Final Instruction No. 20 informed the jury that

[a] verdict of 'not responsible by reason of insanity at the time of the crime' does not mean that the Defendant will be released from custody. Indiana law provides that whenever a Defendant is found not responsible by reason of insanity at the time of the crime, the prosecuting attorney shall file a written petition for mental health commitment with the Court. The Court shall hold a mental health commitment hearing at the earliest opportunity after the finding of not responsible by reason of insanity at the time of the crime, and the Defendant shall be detained in custody until the completion of the hearing.

Appellant correctly emphasizes that jury instructions are to be read as a whole. *See Darby v. State* (1987), Ind., 514 N.E.2d 1049. He argues, however, that this combination of instructions clearly misled the jury.

■ We disagree. By requesting jury Instruction No. 20, appellant raised the subject of his disposition after the trial. The trial court offered Instruction No. 21 so that the jury could better understand the subject raised by appellant. The prevention of confusion regarding verdicts is a legitimate concern in a case involving the defense of insanity:

It is generally inappropriate ... to give an instruction identifying specific penal consequences of a determination of guilt.... However, in cases involving the insanity defense, there will be increased speculation on the part of the jury on the differences in sentencing between verdicts of guilty, guilty but mentally ill and not responsible by reason of insanity. In order to dispel the speculation and to focus the jury on the issue of guilt, rather than possible punishment, an instruction explaining the consequences of each determination in a general way can be appropriate and beneficial to the accused.

*Smith v. State* (1987), Ind., 502 N.E.2d 485, 488. In appellant's case, the trial court could not have indicated that a verdict of "not responsible by reason of insanity at the time of the offense" would result in incarceration or commitment because the hearing had not yet been held and it would be unacceptable for a judge to even imply that the outcome of a hearing was predetermined. Accordingly, the instructions were adequate and we find no error.

■ Finally, appellant challenges the instructions that the jury received on the proof of the elements of the crime. Specifically, he alleges error in Instruction No. 6, which stated the following:

The intent to kill can be found from acts, declarations, and conduct of the defendant at or just immediately before the commission of the offense, from the character of the weapon used, and from the part of the body on which the wound was inflicted.

No objection was made, but appellant advances the novel claim that an objection may be presumed because Instruction No. 6 was the State's tendered instruction. We find no authority for such a proposition. In any event, this instruction is a correct statement of the law in Indiana. We have repeatedly held that the intent to kill may be inferred from the use of a deadly weapon; the nature, duration, or brutality of the attack; and the circumstances surrounding the crime. *Nunn v. State* (1992), Ind., 601 N.E.2d 334, 339 (and cases cited therein). Therefore, there was no error in the giving of this instruction.

### III

Appellant claims that he was denied the effective assistance of counsel.

■ Claims of ineffective assistance of counsel are analyzed using the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). In order to gain relief on such an allegation of error, appellant must demonstrate: (1) that his attorney's performance, under accepted professional standards, was inadequate, and (2) that the inadequate performance deprived him of a fair trial. *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. "Counsel is presumed competent, and appellant must present strong and convincing evidence to rebut that presumption." *Lowery v. State* (1994), Ind., 640 N.E.2d 1031, 1048, *reh'g denied* (quoting *Clark v. State* (1990), Ind., 561 N.E.2d 759, 763). A court denies a defen-

dant a fair trial when the conviction or sentence results from a breakdown in the adversarial process which renders the result unreliable. *Id.* at 1041 (citing *Best v. State* (1991), Ind., 566 N.E.2d 1027). Appellant alleges multiple errors by counsel that resulted in him not receiving a fair trial.

First, appellant claims that counsel erred in opposing the admission of appellant's videotaped confession. He claims that because the defense had stipulated to the facts, the confession could do nothing to establish guilt and would have helped establish insanity. However, counsel could have decided that the tape made appellant appear sane, undermining the effectiveness of an insanity defense. We will not second-guess the propriety of such choices. *Id.*

Second, appellant claims that his defense counsel should have focused on the "horrific methods utilized by the police prior to the giving of the statement." Appellant alleges that this allegedly inappropriate treatment coerced his confession. "[H]orrific methods" refers to those steps that police were forced to take in order to subdue appellant. Appellant offers no authority for the proposition that the force necessary to control an intractable suspect should render any subsequent confession involuntary. There is no evidence in the record that police exceeded the level of force necessary to take appellant into custody and, therefore, there was nothing from which counsel could have argued that the confession was coerced.

Third, appellant claims that counsel's requested jury instruction concerning post-trial procedures revealed counsel's inadequate understanding of the issues in this case. The requested instruction, discussed above in Section II, actually shows a reasonable understanding of the circumstances in this case. Appellant's lawyers probably recognized the risk that jurors might believe that a verdict of "not responsible by reason of insanity at the time of the crime" or "guilty but mentally ill at the time of the crime" would result in appellant's release without treatment. Counsel made an acceptable strategic choice to concentrate his efforts on convincing the jury that his client

needed treatment rather than punishment and would not necessarily be freed in the immediate future. *See Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

Fourth, appellant claims that trial counsel entered an erroneous stipulation. Appellant claims that stipulating to a knowing killing defeats an insanity defense. Appellant is incorrect. Insanity is an affirmative defense and, accordingly, may prevail despite successful proof of all the elements of a crime. Trial counsel made a legitimate decision to concentrate on the insanity defense and, once again, we will not second-guess such a difficult choice. *Lowery,* 640 N.E.2d at 1041.

Finally, appellant offers the failure of counsel to object to the jury instructions discussed in Section II as further support for his claim of ineffective assistance of counsel. To prevail on such a claim, appellant must demonstrate that a proper objection would have been sustained. *Id.* at 1042 (citing *Clark,* 561 N.E.2d at 763). Since we find that these instructions were not erroneous, the failure to object to them cannot demonstrate ineffective assistance of counsel. Appellant's attorneys' performance at trial was not flawless, but that is not the standard. They made legitimate strategic and tactical choices which provide no grounds for granting relief. *See id.* at 1043.

## IV

Appellant claims that his sentence was improperly enhanced.

The enhancement of a presumptive sentence is controlled by Indiana Code § 35–38–1–7.1. That statute includes a list of aggravating factors that justify increasing the basic sentence. Ind.Code Ann. § 35–38–1–7.1(b) (West Supp.1992). It also permits the judge to use other relevant aggravating and mitigating circumstances. Ind.Code Ann. 35–38–1–7.1(d) (West Supp.1992).

The presumptive sentence for murder is forty (40) years. Ind.Code Ann. § 35–50–2–3 (West Supp.1992). In this case, the trial judge imposed a sixty year sentence, citing the following aggravating circumstances: (1)

appellant's "[l]ack of remorse for the crime committed"; (2) his "[p]rior criminal and delinquent activity"; (3) his "admitted criminal activity of a 25–year period involving the use of illegal drugs on nearly a daily basis"; and (4) that "[t]he imposition of a reduced sentence or the suspension of the sentence and the imposition of probation would depreciate the seriousness of the crime...."

■ This Court is endowed by the state constitution with the authority to review and revise sentences. Ind. Const. art. VII, § 4. That authority is currently governed by Indiana Appellate Rule 17(B). In applying this rule we engage in a two-step procedure. First, we determine whether the sentence appears to be disproportionate, i.e., "manifestly unreasonable in light of the nature of the offense and the character of the offender." *Fointno v. State* (1986), Ind., 487 N.E.2d 140, 145. If we determine that such manifest unreasonableness may be present, we must then determine whether "no reasonable person could find such sentence appropriate to the particular offense and offender." *Id.* If, and only if, we find such inappropriateness then we will revise a sentence in order to make it reasonable. *Id.* Sentencing is normally left to the sound discretion of the trial court. *See, e.g., Fugate v. State* (1993), Ind., 608 N.E.2d 1370.

■ We begin by observing that the second and third aggravators are actually the same statutory aggravating circumstance, i.e., "prior criminal and delinquent activity" includes "defendant's admitted criminal activity of a 25–year period." However, since a single aggravating factor is sufficient to support an enhanced sentence, *Duvall v. State* (1989), Ind., 540 N.E.2d 34, this is not a serious deficiency. The final statutory aggravating circumstance was "that imposition of a reduced sentence would depreciate the seriousness of the crime." Ind.Code Ann. § 35–38–1–7.1(b)(4) (West Supp.1991). However, that aggravator only supports a refusal to reduce the presumptive sentence. *Evans v. State* (1986), Ind., 497 N.E.2d 919, 923; *Shackelford v. State* (1993), Ind.App., 622 N.E.2d 1340, 1346. Since the trial court was not considering a reduced sentence, this aggravating circumstance does not support its

action in enhancing the sentence. Appellant's lack of remorse and prior criminal activity aggravators are, however, sufficient to justify an enhanced sentence.

■ It is necessary to consider the mitigating factors, specifically the evidence of appellant's deep mental disturbance. Failure to find a mitigating circumstance clearly supported by the record gives rise to a belief that the court was not cognizant of it and therefore failed to consider it. *Jones v. State* (1984), Ind., 467 N.E.2d 681, 683. The trial court's assertion, in the face of overwhelming evidence, that there were no mitigating circumstances indicates that the judge failed to consider this relevant factor. Last year, in a particularly heinous case, we refused to modify a sixty-year sentence because, though there was substantial evidence of deep mental disturbance, there was no explanation of the relationship between the mental disturbance and the brutal murder that the appellant had committed. *Loveless v. State* (1994), 642 N.E.2d 974, 977. Here, the relationship between appellant's mental illness and his crime is obvious. Specifically, appellant's mental illness made him willing to perform any act that the "voices" commanded him to do. When the voices told him to bite off the victim's finger, he bit the finger off and swallowed it. When the voices ordered him to kill the victim, he shot her and struck her with a splitting maul. If one accepts that appellant was mentally ill, then one must accept that the mental illness caused him to commit the murder and a court must, therefore, mitigate his punishment.

### Conclusion

Accordingly, we affirm the conviction and remand to the trial court for the imposition of a forty-year sentence.

SHEPARD, C.J., and DICKSON, SULLIVAN, and SELBY, JJ., concur.