**Steven Thomas HURST, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 45S00–9703–CR–00179.

Supreme Court of Indiana.

Aug. 26, 1998.

James F. Stanton, Crown Point, for Appellant.

Jeffrey A. Modisett, Attorney General, Katherine L. Modesitt, Deputy Attorney General, Indianapolis, for Appellee.

1. Ind.Code § 35–42–1–1 (1993).

2. Wilson testified that he did not ingest his portion of the LSD that evening due to a prior bad experience with the drug. He instead placed the

SULLIVAN, Justice.

On September 19, 1996, a jury found defendant Steven Hurst guilty of Murder[1], a felony. On November 1, 1996, the trial court sentenced defendant to 55 years in prison. The sole issue on appeal is whether there was sufficient evidence for the jury to have found defendant guilty as charged rather than guilty but mentally ill. We have jurisdiction over this direct appeal because the longest single sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind.Appellate Rule 4(A)(7).

### Background

At approximately 8:00 p.m. on September 15, 1995, sixteen-year old Cholanda Roll met with her friend, Elizabeth Osuch, at Osuch's house. Later that evening, defendant and William Wilson arrived at the house to discuss plans for the evening. The foursome left Osuch's house bound for a local K–Mart so Roll could collect money from her grandmother. The group used the money to purchase four "hits" of LSD. At about midnight, defendant, Osuch and Roll ingested the drugs.[2]

The group mutually agreed to go for a ride in defendant's car. After defendant took the group for a ride, they returned to Osuch's house. At approximately 2 a.m., defendant produced a gun from his sweatshirt pocket and showed it to the group. Later, defendant called Osuch over to the side of her house. There he informed Osuch that Roll was a "weed that needed to be pulled." (R. 119–20.) When Osuch asked defendant for an explanation, he replied that he wanted to kill Roll. At the time, Osuch did not take defendant seriously.

Defendant then insisted that the group go for a walk. As the foursome walked along railroad tracks, defendant again produced his gun, this time pointing it toward Roll's back. Osuch slapped defendant's hand down, positioned herself between defendant and Roll

package in a tissue. Wilson did, however, admit to smoking marijuana before he arrived at Osuch's home.

and moved Roll away from the group. Osuch announced that she wanted to return to her house. Roll was still oblivious to defendant's conduct, so Osuch forcibly turned Roll around and they began walking back toward Osuch's house. Osuch and Roll continued to walk along the railroad tracks while defendant and Wilson walked along the road. At an intersection just before Osuch's house, defendant suggested they turn to go into the cemetery. The group walked to the cemetery where they remained until 6:15 a.m. before returning to Osuch's house.

Upon leaving the cemetery, defendant and Wilson walked up a hill followed by Roll and then Osuch. Then, defendant lagged behind Wilson and positioned himself next to Osuch. He produced the gun from his shirt pocket, placed it on the back of Roll's head and shot her on contact. Defendant told Wilson and Osuch that they were the only three who knew of the incident, so "don't let this happen to you." (R. at 134.) Defendant waved the gun at Wilson and Osuch and told them to keep moving. The threesome returned to Osuch's house.

After the incident, defendant repeatedly visited Osuch and Wilson presumably to ensure their silence. Concerned for their safety, neither Osuch nor Wilson contacted the police immediately after the shooting. However, when the defendant told them two days after the shooting that Roll's body had been found, Wilson contacted the police. The defendant pled not guilty and later filed a plea of insanity. When a defendant interposes a defense of insanity, a jury may return four possible verdicts: (1) guilty, (2) not guilty, (3) not responsible by reason of insanity at the time of the crime, or (4) guilty but mentally ill at the time of the crime. Ind.Code § 35–36–2–3 (1993). The jury selected the first and found defendant guilty as charged.

### Discussion

■■■ Defendant challenges the jury's failure to return a guilty but mentally ill verdict.[3] We have never explicitly stated the standard of review for such a challenge. But we have held that when challenging a jury's rejection of a defendant's insanity defense, a defendant must do so by asserting that the conviction was contrary to law. *Barany v. State,* 658 N.E.2d 60, 63–64 (Ind.1995); *Green v. State,* 469 N.E.2d 1169, 1171 (Ind. 1984) (citing *Turner v. State,* 428 N.E.2d 1244, 1246 (Ind.1981)).[4] Here, however, defendant contends that a "contrary to law" burden is too great and instead requests that we create a new standard of review for those appeals that challenge a jury's rejection of a guilty but mentally ill verdict. We decline to do so. Such claims essentially challenge the sufficiency of the evidence. Accordingly,

---

3. The only relief defendant requests is that we modify his verdict to guilty but mentally ill. Defendant does not request a reduction in the sentence imposed by the trial court. We note, however, that the trial court imposed the presumptive sentence which is consistent with other sentences imposed upon defendants who were found guilty but mentally ill. *See Weeks v. State,* 697 N.E.2d 28, 31 (Ind.1998) (reduction of defendant's 60 year sentence to the presumptive sentence of 50 years due to defendant's mental illness); *Archer v. State,* 689 N.E.2d 678, 685–86 (Ind.1997) (defendant's long-standing mental illness should have been considered as a mitigator and therefore warranted a reduction in defendant's total sentence); *Gambill v. State,* 675 N.E.2d 668, 677–78 (Ind.1996) (defendant's mental illness was a substantial mitigator calling for the imposition of the presumptive sentence); *Mayberry v. State,* 670 N.E.2d 1262, 1271 (Ind. 1996) (finding an abuse of discretion where trial court failed to consider defendant's mental illness as a mitigator; remanded for imposition of presumptive sentence); *Barany v. State,* 658 N.E.2d 60, 67 (Ind.1995) (finding a relationship

between defendant's mental illness and the commission of the crime; remanded for imposition of presumptive sentence).

4. A defendant "may challenge the jury verdict only by an assignment that the verdict is contrary to law. Our standard of review in such case was set forth in *Turner v. State,* 428 N.E.2d 1244, 1246 (Ind.1981), as follows:

One who has interposed such a defense and failed therein at the trial level has a monumental burden if he seeks to upset the finding of the fact trier on appeal, for he is appealing from a negative finding, and the issue is not whether or not the finding was sustained by the evidence but whether it was contrary to all the evidence and hence contrary to law. It is only where the evidence is without conflict and leads to but one conclusion and the trier of fact has reached an opposite conclusion, that the decision predicated upon such finding will be disturbed as being contrary to law. [Citation omitted.]"

*Green v. State,* 469 N.E.2d 1169, 1171 (Ind.1984).

when a defendant challenges a jury's rejection of a guilty but mentally ill verdict, a court will review the jury's guilty verdict in light of whether there was sufficient evidence to sustain the conviction.

To determine whether there was sufficient evidence to sustain a conviction, we will neither reweigh evidence nor judge the credibility of the witnesses. *Lampkins v. State,* 682 N.E.2d 1268, 1274–75 (Ind.1997), *opinion modified* by 685 N.E.2d 698 (Ind. 1997). *See also Lee v. State,* 684 N.E.2d 1143, 1149 (Ind.1997); *Horan v. State,* 682 N.E.2d 502, 512 (Ind.1997). "We will affirm a conviction if, after considering the reasonable inferences and probative evidence supporting the verdict, we conclude that a reasonable trier of fact could find each element of the charged crime beyond a reasonable doubt." *Lampkins,* 682 N.E.2d at 1275 (quoting *Cook v. State,* 675 N.E.2d 687, 692 (Ind.1996)).

Defendant relies on the diagnosis of a court-appointed psychiatrist who found that the defendant suffered from LSD psychosis "[w]hich substantially disturbed his thinking, feeling and behavior, and impaired his ability to function." (R. at 500.) The psychiatrist testified that LSD psychosis was a mental illness. The court-appointed clinical psychologist, however, testified that defendant was not mentally ill but that he was "under the influence [of LSD which] is not in and of itself a mental illness, it's a condition." (R. at 525.) This was sufficient evidence for the jury to return a verdict of guilty rather than guilty but mentally ill.

Before concluding, we pause to consider the relief being sought here. Defendant does not seek a reduction in his sentence. Rather, he appears to seek application of Ind.Code § 35–36–2–5 which provides for certain evaluation and treatment procedures whenever a defendant is found guilty but mentally ill.[5] We note that independent of Ind.Code § 35–36–2–5(b), the Department of

Correction is required to conduct a psychiatric evaluation and order psychiatric services for all committed offenders. *See* Ind.Code §§ 11–10–1–2 and 3(b) (1993). Indiana Code § 11–10–1–2 authorizes the Department of Correction to utilize in this regard the presentence investigative report and any reports of presentence physical or mental examinations, as well as any other information forwarded by the sentencing court. Ind.Code § 11–10–1–2(b) (1993). Further, before assigning an offender to a facility or program, the Department of Correction must provide the offender the opportunity to present pertinent information and discuss all aspects of his or her evaluation, classification and assignment process. Ind.Code § 11–10–1–3(d) (1993). In the end, defendant does not demonstrate that he would have received some advantage had he been found guilty but mentally ill that he will not otherwise receive. *Cf. Douglas v. State,* 663 N.E.2d 1153 (Ind. 1996) (trial court affirmed in part because of defendant's failure to suggest any disadvantage suffered from the court's action). However, in light of the psychiatrist's testimony at trial that defendant suffered from mental illness, we grant defendant leave to petition the trial court to forward any psychiatric evaluations of defendant in the trial court's possession to the Department of Correction.

### Conclusion

We find there was sufficient evidence to support the judgment of conviction. The trial court judgment is affirmed.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.

---

**5.** Indiana Code § 35–36–2–5 provides in relevant part:

> (b) If a defendant who is found guilty but mentally ill at the time of the crime is committed to the department of correction, the defendant shall be further evaluated and then treated in such a manner as is psychiatrically

indicated for the defendant's mental illness. Treatment may be provided by:

> (1) the department of correction; or
> (2) the division of mental health after transfer under [Ind.Code § ] 11–10–4.

Ind.Code § 35–36–2–5(b) (Supp.1994).