George Allen **CARSON,** Appellant–
Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 53A01–0309–CR–326.

Court of Appeals of Indiana.

April 30, 2004.

Phyllis J. Garrison, McMains Foster & Morse, P.C., J. Gregory Garrison, Garrison & Kiefer, P.C., Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Daniel Jason Kopp, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant George Allen Carson ("Carson") appeals the trial court's determination that he was guilty but mentally ill for the attempted murder of his wife, Tricia Carson ("Wife"). We affirm.[1]

---

1. We heard oral argument in this case on April 14, 2004, at Saint Mary–of–the–Woods

## Issues

Carson raises two issues, which we restate as:

I. Whether the trial court's determination that Carson was guilty but mentally ill was contrary to law because the evidence demonstrated that he was insane at the time of the attempted murder; and

II. Whether the Indiana Supreme Court's holding in *Barany v. State*, 658 N.E.2d 60 (Ind.1995), precluded Carson from proving that he was not responsible by reason of insanity at the time of the offense.

## Facts and Procedural History

Carson suffers from a psychiatric disorder that causes him to experience paranoid and persecutory delusions. The medication that Carson takes for this disorder has possible adverse side effects on sexual performance. As a result, two months prior to January 11, 2001, Carson stopped taking his medication.

On the afternoon of January 11, 2001, Carson and Wife attempted to have sexual intercourse. However, Carson became agitated and blamed Wife when he was unable to perform sexually. In response, Wife commented that until Carson had a "better hold of what he was going through," they should refrain from being intimate. Tr. at 8. Carson retorted that he would not be having sex with her again.

Subsequently, Wife went to the grocery store. When Wife returned home at approximately 6:00 p.m., Carson "was very agitated and said that he had figured out everything." *Id.* Carson explained that he had talked to "Bear or Dog and figured

everything out." [2] *Id.* at 11. Carson proceeded to tell Wife that she "had to shoot him in the head that night before day break and if that didn't happen before daylight that [she] would regret it." *Id.* Because Carson had never been violent in the past, Wife was very concerned about this statement. Wife took her stepdaughter, J.C., who suffers from cerebral palsy, and drove to Carson's mother's house in Indianapolis because, in the past, Carson's mother had always been able to convince him to seek medical treatment. However, Carson's mother was not at home when Wife and J.C. arrived. As the two waited for Carson's mother to return home, Wife contacted Carson twice to verify that he was all right. During the second telephone conversation, Carson apologized to Wife for his behavior, asked her to come back home, and assured her that everything was going to be fine.

When Wife and J.C. returned home, J.C. went to bed and Wife and Carson watched television for a couple of hours. At approximately midnight, after Carson and Wife had turned off the television, Carson accused Wife of sleeping with another man and told her that she had to die. Carson "pinned" Wife on the bed with one arm and grabbed a handgun from the nightstand with his other hand. Tr. at 18. A struggle ensued and Carson placed the handgun, first, in Wife's mouth and, second, against her head. Carson next placed a pillow over Wife's head and began suffocating her. When Carson removed the pillow from Wife's head, he placed his hand over Wife's mouth and "plugged [her] nose to try to get [her] to stop breathing." *Id.* at 19. At some point during the struggle J.C. appeared at the doorway "upset

College in Terre Haute, Indiana. We thank counsel for their advocacy and extend our appreciation to Saint Mary–of–the–Woods College for hosting the event.

2. The couple's dog's name is Bear; however, the record is unclear whether Carson was referring to their dog or something else.

and saying please stop, don't." *Id.* Carson ordered J.C. to "go back to bed, leave, get out of here." *Id.* Carson then "rolled [Wife] over on [her] stomach," placed a pillow directly against her head, and shot her in the back of the head, through the pillow. *Id.* Next, Carson put the handgun down and left the bedroom. Wife slowly exited the bedroom and Carson grabbed her by the hair and "was kind of jerking [her] around, dragging [her] down the hall." *Id.* at 20. Eventually, Carson let go of Wife's hair and proceeded down the stairs to retrieve his rifle. Wife was able to escape to a neighbor's house but Carson shot her in the side.

On January 12, 2001, Carson was arrested for the attempted murder of Wife. Carson waived his right to a jury trial and stipulated to the admission of the Incident Report. The Incident Report provided, in part, that when Carson was apprehended, he told the investigating officers that the guns "were in the backyard, under a bush." State's Ex. 5. The Incident Report also revealed that J.C. told the investigating officers that, after she heard the second gunshot, Carson came back inside the house without any weapons and informed her that "they had to leave." *Id.*

On April 4, 2003, at a bench trial, Carson admitted to shooting Wife but asserted, as a defense, that he was legally insane at the time of the offense. Two psychiatrists and one psychologist examined Carson prior to trial. Doctor George Parker ("Doctor Parker"), a forensic psychiatrist with the Indiana University School of Medicine, testified that, at the time of the attempted murder, Carson was unable to appreciate the wrongfulness of his behavior. Doctor Jerry E. Neff ("Doctor Neff"), the Associate Medical Director of the Center for Behavioral Health, submitted a report to the trial court wherein he concluded that Carson's "persecutory beliefs were

a significant factor in [Carson's] actions at the time of the alleged offense. However, it is [his] professional opinion that [Carson] was still capable of appreciating the wrongfulness of the alleged offense and as such was legally sane." State's Ex. 6. Psychologist Jacqueline A. Bienek ("Bienek"), a Health Service Provider in Psychology of the Center for Behavioral Health, also examined Carson and determined that he "was not sane at the time of the alleged crime." Def.'s Ex. B.

On June 27, 2003, the trial court found Carson guilty but mentally ill of attempted murder. The trial court sentenced Carson to the Indiana Department of Correction for a period of thirty years, with five years suspended and five years of probation. This appeal ensued.

## Discussion and Decision

### I. *Proof of Insanity*

■ Carson first argues that the trial court's determination that he was guilty but mentally ill was contrary to law because the evidence demonstrated that he was insane at the time of the attempted murder. Because Carson admits to committing the alleged offense, the only issue before us is whether the record supported the trial court's finding that he was guilty but mentally ill rather than not guilty by reason of insanity. Pursuant to Indiana Code Section 35–41–3–6(a), "[a] person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense." This section defines "mental disease or defect" as "a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested only by repeated unlawful or antisocial conduct." Ind.Code 35–41–3–6(b).

■ The "insanity defense" is an affirmative defense for which the burden of proof is on the defendant. *Thompson v. State*, 804 N.E.2d 1146, 1148 (Ind.2004). "The State must prove the offense, including *mens rea*, beyond a reasonable doubt but need not disprove insanity." *Id.* (citing Ind.Code 35–41–4–1). To avoid responsibility for the crime proven by the State, the defendant must establish the insanity defense by a preponderance of the evidence. *See* Ind.Code 35–41–4–1(b). The question of whether a defendant can appreciate the wrongfulness of his or her conduct is one for the trier of fact. *See Thompson*, 804 N.E.2d at 1149. A defendant who claims that his or her insanity defense should have prevailed at trial is in the position of one appealing from a negative judgment, and we will reverse when the evidence is without conflict and leads only to the conclusion that the defendant was insane when the crime was committed. *Id.* As such, we will not reweigh the evidence or assess the credibility of witnesses but will consider only the evidence most favorable to the judgment and the reasonable and logical inferences to be drawn therefrom. *Id.*

In the present case, Carson challenges the trial court's determination that he was guilty but mentally ill as contrary to law because "[a]ll credible evidence presented at trial supports a finding that [he] was insane at the time of the crime." Appellant's Br. at 7. In particular, Carson contends that Doctor Neff's determination that Carson was sane at the time of the attempted murder is devoid of any probative value because it merely "states a conclusion." *Id.* We disagree.

Doctor Neff's determination that Carson was sane at the time of the offense was based upon his own evaluation of Carson, as well as his review of Carson's medical records. Doctor Neff's report to the trial court provides, in pertinent part, that:

[Carson] freely admits to a history of alcohol and drug abuse but there is no clear indication that this was a factor in his actions at the time of the alleged offense. In today's interview, he reports on a very extensive paranoid delusional system which seems to have been present since adolescence. Today's report is entirely consistent with his reports at treatment contacts between two and five months prior to the alleged offense. No other significant abnormalities in mental status are elicited now or clearly documented previously. It is clear that these persecutory beliefs were a significant factor in [Carson's] actions at the time of the alleged offense. However, it is my professional opinion that [Carson] was still capable of appreciating the wrongfulness of the alleged offense and as such was legally sane.

State's Ex. 6. This report constitutes probative evidence that Carson was sane at the time of the offense. As such, the trial court's determination that Carson was guilty but mentally ill was not contrary to law.

Moreover, we note that, pursuant to our supreme court's decisions in *Barany v. State*, 658 N.E.2d 60, 64 (Ind.1995), and, more recently, in *Thompson*, 804 N.E.2d at 1149, even if the medical experts were to have unanimously agreed that Carson was insane at the time of the offense, the trial court's guilty but mentally ill determination would still be proper on these facts. The *Barany* court upheld a conviction notwithstanding unanimous expert opinion that the defendant was insane at the time that he killed his live-in companion. *Barany*, 658 N.E.2d at 64. There, neighbors saw the defendant sitting naked on the end of a pier. *Id.* When the defendant's female companion placed a blanket on him,

the defendant bit her finger off. *Id.* The companion quickly ran back into the house. *Id.* After a short while, the defendant followed her into the house and shot her eight times, used a splitting maul to destroy household appliances, and struck the companion's body with the maul. *Id.* At trial, three court-appointed psychiatrists testified that at the time of the murder, the defendant was unable to understand the wrongfulness of his conduct. *Id.* However, a police detective testified that a few hours after the crime, the defendant told him that the victim nagged and complained and one of the defendant's friends testified that the defendant "seemed O.K." to him. *Id.* In addition, the defendant's sister testified that the defendant had related to her that he believed the companion was calling the police when he killed her. *Id.* The jury found the defendant guilty but mentally ill. *Id.* On direct appeal, our supreme court upheld the conviction, finding that "the jury could have decided that [the lay] testimony about [the defendant's] behavior was more indicative of his actual mental health at the time of the killing than medical examinations." *Id.*

More recently, in *Thompson,* two experts submitted reports indicating they believed that, due to a mental illness, defendant was unable to appreciate the wrongfulness of her actions when she committed the offense of residential entry. 804 N.E.2d at 1148. Nevertheless, the trial court determined that the defendant was guilty but mentally ill at the time of the offense as evidenced by the fact that she had been released from the hospital only days before the incident because she had no active psychotic symptoms, no homicidal or suicidal ideations, and was calm and pleasant without agitation. *Id.* On appeal, another panel of this Court reversed the trial court's determination because there was no lay witness testimony regarding the defendant's sanity at the time of the offense. *Id.* Upon granting the defendant's petition to transfer, our supreme court held that a finder of fact is entitled to decide whether to credit the opinions of experts on insanity, even in the absence of lay witness testimony. *Id.* at 1149. The *Thompson* court held that nonmedical evidence of the defendant's sanity could be gleaned by the facts that, first, she only removed her belongings from the house that she unlawfully entered and, second, the police officers who stopped the defendant believed that she was "sufficiently lucid to be allowed to go about her business." *Id.*

In a concurring opinion, Justice Sullivan explained that:

> There may be a temptation to read into today's opinion—because we reverse the decision of the Court of Appeals—a suggestion that *Barany* has been expanded and that psychiatric testimony is even less weighty than before. I do not believe that to be the Court's intent. It seems to me that the law would require us, even under today's opinion, to set aside a conviction where (1) there was unanimous credible, expert testimony that a defendant was insane at the time of the crime at issue and (2) there was no other evidence of probative value from which a conflicting inference could be drawn. Said differently, there will be insufficient evidence to convict where (1) there is unanimous credible, expert testimony that a defendant is insane at the time of the crime at issue and (2) there is no other evidence of probative value from which a conflicting inference can be drawn.

*Id.* at 1152 (Sullivan, J., concurring).

Here, in addition to Doctor Neff's report that Carson was sane at the time of the offense, Wife testified that, prior to the first gunshot, Carson ordered J.C. to re-

turn to her bedroom because he "didn't want her to be there." Tr. at 20. Further, the Incident Report provided that when Carson was apprehended, he told the investigating officers that the guns "were in the backyard, under a bush." State's Ex. 5. The Incident Report also revealed that J.C. told the investigating officers that, after she heard the second gunshot, Carson came back inside the house without any weapons and informed her that "they had to leave." *Id.* From this evidence and the inferences drawn therefrom, a trier of fact could have determined that Carson appreciated the wrongfulness of his conduct when he attempted to murder Wife.

## II. Validity of Indiana Supreme Court Precedent

Second, Carson asserts that the Indiana Supreme Court's holding in *Barany*, 658 N.E.2d at 60, precluded him from proving that he was not responsible by reason of insanity at the time of the offense because he suffers from an episodic mental illness that causes him to experience unpredictable delusions and hallucinations. Put another way, Carson challenges our supreme court's holding in *Barany* on the basis that it allows a fact finder—charged with determining whether the defendant was guilty but mentally ill or legally insane at the time of the offense—to disregard unanimous expert testimony that the defendant was insane at the time of the offense and, instead, to rely solely upon lay witness evidence regarding the defendant's sane demeanor before and after the commission of the crime. Initially, we observe that *Barany* and other cases cited by Carson are distinguishable from the case at bar because, here, the experts that examined Carson did not unanimously agree that he was legally insane at the time of the crime. Rather, as previously mentioned, Doctor Neff concluded that Carson was sane at the time of the offense.

Further, and in response to our decision in *Moler v. State*, 782 N.E.2d 454 (Ind.Ct. App.2003), *trans. denied*, our supreme court has revisited and reaffirmed its decision in *Barany*. *See Thompson*, 804 N.E.2d 1146. In *Moler*, we upheld the trial court's determination that a defendant who suffers from an episodic mental illness was guilty but mentally ill at the time of the offense; however, in so doing, we observed the following:

> *Barany* has made it very difficult even for defendants with well-documented mental illnesses to successfully raise the insanity defense. Under the rule of *Barany*, even if all expert testimony regarding a defendant's state of mind points to the fact that the defendant could not have appreciated the wrongfulness of his actions at the time of a crime, the jury is free to disregard the experts' opinions in favor of lay evidence of the defendant's demeanor before and after the crime.
>
> The proposition that a jury may infer that a person's actions before and after a crime are "indicative of his actual mental health at the time of the" crime is logical when dealing with a defendant who is not prone to delusional or hallucinogenic episodes. However, when a defendant has a serious and well-documented mental disorder, such as schizophrenia, one that causes him to see, hear, and believe realities that do not exist, such logic collapses. In the interests of justice, we hope that our supreme court will revisit this rule.

782 N.E.2d at 458–59.

On March 23, 2004, our supreme court decided *Thompson*, wherein it held that a finder of fact is entitled to decide whether to credit the opinions of experts on insanity, even in the absence of lay witness testimony. 804 N.E.2d at 1149. Indeed,

as previously mentioned, the *Thompson* court found sufficient evidence to support the trial court's guilty but mentally ill determination when the evidence revealed that: (1) the defendant removed only items belonging to her from the house that she unlawfully entered; and (2) the police officers who stopped the defendant following the incident believed that she was lucid enough to proceed about her business. Although *Thompson* did not define the episodic parameters regarding what constitutes probative non-medical evidence, it demonstrates that the Indiana Supreme Court has revisited and reaffirmed its holding in *Barany*.[3] Accordingly, we decline Carson's invitation to disregard supreme court precedent.

Affirmed.

NAJAM, J., and ROBB, J., concur.

---

**3.** At oral argument, Carson argued that our supreme court's holding in *Barany* should be revisited because it allows the trier of fact to consider lay witness testimony regarding the defendant's demeanor and conduct before and after the criminal episode, rather than "at the time of the offense." In particular to his case, Carson asserts that there was no evidence that he was sane at the time that he committed the offense; rather, the only evidence of his sanity, i.e., evidence that he hid the gun and rifle and informed J.C. that they had to leave, occurred after the time of the offense. However, this argument is misplaced for two reasons. First, the record demonstrates that, after Carson attempted to suffocate Wife and before he shot her, J.C. appeared at the couple's doorway and Carson ordered her to leave the room. This latter piece of evidence, which undoubtedly occurred "at the time of the offense," creates a reasonable inference that Carson appreciated the wrongfulness of his conduct at the time that he was committing the offense and, therefore, did not want his daughter to witness him shoot her stepmother.

Second, as previously mentioned, our supreme court has recently revisited its holding in *Barany*, and under our supreme court's holding in *Thompson*, evidence that Carson: (1) ordered J.C. to return to her bedroom during the offense; (2) hid the gun and rifle immediately after the incident; and (3) told J.C. they had to leave immediately following the offense, is sufficient to support the trial court's guilty but mentally ill finding. *See, e.g., Thompson*, 804 N.E.2d at 1149 (finding sufficient evidence where the police officers who stopped the defendant following the incident believed that she was lucid enough to proceed about her business).