**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 18 2014, 10:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY R. HARTWELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A04-1304-CR-208 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Michael J. Lewis, Judge
Cause Nos. 84D06-1202-FC-373, 84D06-0802-FD-413

**March 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Appellant-Defendant Timothy Hartwell was found guilty but mentally ill of Class C felony criminal stalking. Hartwell had interposed an insanity defense and was examined by two court-appointed doctors, a psychologist and a forensic psychiatrist. While one evaluator concluded that Hartwell was legally insane, the other concluded that he was not. Hartwell contends that the jury's rejection of his insanity defense was clearly erroneous. Because we conclude that the jury's rejection was not clearly erroneous, we affirm the judgment of the trial court.

**FACTS AND PROCEDURAL HISTORY**

On February 1, 2008, the State charged Hartwell with Class D felony auto theft in cause number 84D06-0802-FD-413 ("Cause No. 413"). On June 2, 2010, Hartwell pled guilty in Cause No. 413 and entered an adult mental health deferral program. In 2010, Megan Loudermilk was a correctional officer with the Vigo County Sheriff's Department. During this period, Harwell was an inmate in the Vigo County Jail. Officer Loudermilk never initiated any contact with Hartwell that was outside the scope of her duties. One day, Hartwell passed a letter underneath his door to Officer Loudermilk. The letter was "inappropriate[,] said something about wanting to get to know [Officer Loudermilk;]" the letter was entitled "'brown eyed bombshell[.]'" Tr. p. 46. Hartwell continued to write Officer Loudermilk letters. As the frequency of the letters increased, reaching up to six letters a night, Officer Loudermilk became intimidated and concerned. Hartwell did not stop writing to Officer Loudermilk even after she went to his cell one night and told him to stop.

Meanwhile, on October 13, 2010, the State filed a notice of probation violation and moved to revoke Hartwell's adult mental health referral agreement. On March 16, 2011, the trial court ordered Hartwell committed to the Department of Mental Health and Social Services and placed in a mental health facility. In April of 2011, Hartwell was transferred to the Evansville State Hospital. Hartwell continued to send Officer Loudermilk letters following his transfer.

On June 30, 2011, the Evansville State Hospital discharged Hartwell and he was released on his own recognizance the next day. Hartwell continued to send Officer Loudermilk letters and telephone her when she was working. In some of the letters to Officer Loudermilk, Hartwell apologized and acknowledged that he may have hurt her. On November 12, 2011, Officer Loudermilk left work and was walking to her car when she noticed Hartwell standing approximately thirty to forty feet away pacing and "just saying something." Tr. p. 55. On November 15, 2011, Officer Loudermilk applied for a protective order concerning Hartwell. Also on that date, a protective order was issued against Hartwell to be effective until November 15, 2013. Despite receiving the protective order, Hartwell continued to contact Officer Loudermilk, including mailing her a prayer rock and inscribed bible on November 28, 2011.

On February 2, 2012, the State charged Hartwell with Class C felony criminal stalking in cause number 84D06-1202-FC-373 ("Cause No. 373"). On April 20, 2012, Hartwell filed a notice of insanity defense. On May 14, 2012, the trial court appointed Dr. George F. Parker, M.D., to examine Hartwell and appointed Dr. Howard Wooden, Ph.D., the next day.

3

On January 4, 2013, the State moved to amend its charging information against Hartwell to include allegations that the conduct constituting stalking had continued up to that date, when Hartwell allegedly sent Officer Loudermilk four letters. On January 7, 2013, the trial court granted the State's motion to amend its charging information.

Hartwell's jury trial began on January 8, 2013, Drs. Wooden and Parker testified regarding their evaluations of Hartwell. Dr. Wooden, a clinical psychologist, testified that he evaluated Hartwell in May of 2012 and diagnosed him as a paranoid schizophrenic who suffered from erotomania, a mental disorder where one develops a delusion that another is in love with him. Dr. Wooden opined that, at the time of his evaluation, Hartwell was unable to appreciate the wrongfulness of his actions. Dr. Parker, a forensic psychiatrist, testified that he evaluated Hartwell in June of 2012 and determined that he was competent to stand trial and opined that, although he had a mental illness at the time of his offenses, he was able to appreciate the wrongfulness of his actions. Dr. Parker opined that Hartwell was best able to appreciate the wrongfulness of his actions when he was in the Evansville State Hospital and shortly afterwards (due to medication) but that even as far back as 2010 or 2011 he was able to. Dr. Parker also opined that the letters in which Harwell apologized to Officer Loudermilk indicated an understanding that what he was doing was wrong. On January 9, 2013, the jury found Hartwell guilty but mentally ill of criminal stalking. On February 27, 2013, the trial court sentenced Hartwell to four years of incarceration for criminal stalking in Cause No. 373 and ordered that he serve one and one-half years of his previously-suspended sentence for auto theft in Cause No. 431, to be served consecutively.

## DISCUSSION AND DECISION

### Whether the State Produced Sufficient Evidence to
### Sustain the Jury's Verdict of Guilty but Mentally Ill

Hartwell claims that the jury's finding that he was guilty but mentally ill, as opposed

to not guilty by reason of insanity, is clearly erroneous.

> To sustain a conviction, the State must prove each element of the charged offense … beyond a reasonable doubt. *See Galloway v. State*, 938 N.E.2d 699, 708 (Ind. 2010), *reh'g denied* (citing Ind. Code § 35-41-4-1(a) (2004); *In re Winship*, 397 U.S. 358, 364, 90 S .Ct. 1068, 25 L. Ed. 2d 368 (1970)). But even if the State meets this burden, a defendant in Indiana can avoid criminal responsibility by raising and successfully establishing what is commonly referred to as the "insanity defense." *Id*. (citing Ind. Code § 35-41-3-6(a) (2004)). "A successful insanity defense results in the defendant being found not responsible by reason of insanity [.]" *Id*. (citing Ind. Code §§ 35-36-2-3, -4 (2004)).
>
> It is the defendant who bears the burden of establishing the insanity defense by a preponderance of the evidence. *Id*. (citing I.C. § 35-41-4-1(b)). To meet this burden, the defendant must establish both: (1) that he suffers from a mental illness, and (2) that this mental illness rendered him unable to appreciate the wrongfulness of his conduct at the time of the offense. *Id*. (citing I.C. § 35-41-3-6(a)). "Thus, mental illness alone is not sufficient to relieve [a defendant of] criminal responsibility." *Id*. (citing *Weeks v. State*, 697 N.E.2d 28, 29 (Ind. 1998)). Instead, a defendant who is mentally ill but fails to establish that he was unable to appreciate the wrongfulness of his conduct may be found guilty but mentally ill. *Id*. (citing *Taylor v. State*, 440 N.E.2d 1109, 1112 (Ind. 1982)).
>
> The question of whether a defendant appreciated the wrongfulness of his conduct at the time of the offense is a question for the jury to determine. *Id*. at 709 (citing *Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004)). Although Indiana Code section 35-36-2-2 (2004) provides for the use of expert testimony to assist the jury in determining the defendant's insanity, the jury has extremely wide latitude and such expert testimony is merely advisory. *Id*. "[E]ven unanimous expert testimony is not conclusive on the issue of sanity." *Id*. (citing *Cate v. State*, 644 N.E.2d 546, 547 (Ind. 1994)). The jury is free to disregard the unanimous testimony of experts and rely instead on conflicting testimony by lay witnesses. *Id*. (citing *Barany v. State*, 658 N.E.2d 60, 63 (Ind. 1995)). Further, even if there is no conflicting lay testimony, the jury is free to disregard or discredit the expert testimony. *Id*. (citing *Thompson*, 804 N.E.2d

at 1149); *see also Carson v. State*, 807 N.E.2d 155, 161-62 (Ind. Ct. App. 2004) (noting that our supreme court in *Thompson* reaffirmed that the finder of fact is entitled to decide whether to credit the opinions of experts on insanity, even in the absence of lay witness testimony).

It is the jury's province to weigh the evidence and assess the credibility of witnesses, and a finding that a defendant was not insane at the time of the offense thus warrants substantial deference from reviewing courts. *Id*. (citing *Barany*, 658 N.E.2d at 63). A defendant arguing on appeal that his insanity defense should have prevailed at trial faces "a heavy burden because he or she 'is in the position of one appealing from a negative judgment.'" *Id*. (quoting *Thompson*, 804 N.E.2d at 1149). On appeal, we will not reweigh evidence, reassess witness credibility, or disturb reasonable inferences made by the trier of fact, even though "more reasonable" inferences might have been made. *Id*. Although this standard of review is deferential, it is not impossible, and our supreme court has long held that "where the defendant claims the insanity defense should have prevailed, the conviction will be set aside 'when the evidence is without conflict and leads only to the conclusion that the defendant was insane when the crime was committed.'" *Id*. at 709-10 (citing *Thompson*, 804 N.E.2d at 1149; *Barany*, 658 N.E.2d at 63–64).

*Fernbach v. State*, 954 N.E.2d 1080, 1084-85 (Ind. Ct. App. 2011).

In order to convict Hartwell of Class C felony stalking the State was required to establish that he "stalk[ed] another person [when a] protective order to prevent domestic or family violence, a no contact order, or other judicial order … has been issued by the court to protect the same victim or victims from the person and the person has been given actual notice of the order[.]" Ind. Code § 35-45-10-5(b)(2). Hartwell does not claim that the State failed to prove any of the elements constituting Class C felony criminal stalking, claiming only that the jury erroneously failed to accept his insanity defense. This is, quite simply, not a case where the evidence is without conflict and leads inexorably to the conclusion that Hartwell was unable to appreciate the wrongfulness of his acts or stalking when he committed them. At the very least, Dr. Parker opined on the stand that, although mentally ill,

6

Hartwell was able to appreciate the wrongfulness of his actions and, indeed, had been able to as far back as 2010, when Hartwell began writing letters to Officer Loudermilk. The jury was entitled to accept Dr. Parker's opinion and reject Dr. Wooden's opinion to the contrary, which it did. Harwell's argument is nothing more than an invitation to reweigh the evidence, which we will not do.

The judgment of the trial court is affirmed.

MATHIAS, J., and PYLE, J., concur.