Alice SAMPLE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A01–9205–CR–154.

Court of Appeals of Indiana,
First District.

Oct. 29, 1992.

R. Stephen Donovan, Martinsville, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

Alice Sample appeals her conviction of neglect of a dependent, a class D felony. The conviction arises from Sample's failure to obtain prompt medical care for her four-month-old daughter after the child fell and fractured her skull.

We affirm.

First, Sample challenges the sufficiency of the evidence to sustain her conviction. She contends there was no evidence produced at trial which would establish that she "knowingly" failed to seek proper medical treatment for her daughter. In support of this contention, she insists that the definition of knowledge in neglect of dependent cases involves a subjective standard, i.e. whether the accused was subjectively aware of a high probability that she placed her dependent child in a situation involving an actual and appreciable danger to the child.

We cannot disagree with Sample on the level of proof required or that the factfinder applies a subjective rather than objec-

tive test in these types of cases. See *Armour v. State* (1985), Ind., 479 N.E.2d 1294, 1297. But the State may prove Sample's actual knowledge by resort to circumstantial evidence. *Hill v. State* (1989), Ind. App., 535 N.E.2d 153, 154. And, the jury need not have believed Sample's testimony that the swelling occurred suddenly on December 31, 1990. " '[N]eglect is the want of reasonable care—that is, the omission of such steps as a reasonable parent would take, such as are usually taken in the ordinary experience of mankind....' " *White v. State* (1989), Ind., 547 N.E.2d 831, 836 (quoting *Eaglen v. State* (1967), 249 Ind. 144, 150, 231 N.E.2d 147, 150. When we consider only that evidence which is favorable to the State together with all logical and reasonable inferences to be drawn therefrom, *McClaskey v. State* (1989), Ind., 540 N.E.2d 41, 45, we must conclude that there was sufficient evidence of probative value from which the jury could find Sample knowingly neglected her dependent child beyond a reasonable doubt.

The State alleged in its information against Sample, that between December 21, 1990 and December 31, 1990, Sample, a person having the care, custody and control of A.L.S., her dependent, did knowingly place A.L.S. in a situation endangering her life or health, to-wit: "failed to seek prompt proper medical treatment for A.L.S. after she received a bump to her head, which bump resulted in swelling to the head and a skull fracture." Sample testified and told investigators that the "bump" to her four-month-old daughter's head occurred around lunch time on December 29, 1990. At trial, Sample testified that the child was in her "punkin" seat on the couch when she rolled off and struck her head. Sample was not in the room, but retrieved the baby immediately after the fall. She admits that she saw a mark and a bump on the child's head and her husband put ice on it immediately.

Two days later, on December 31, 1990, Sample arranged to have her sister baby-sit the child that evening. Within two minutes from the time Sample's sister Tonnie picked the baby up from Sample, Tonnie observed that the baby was crying and stiffening out in pain. She removed the child's hat and observed the child's swollen skull. She took A.L.S. back to Sample, and refused to care for her, indicating to Sample that something was seriously wrong with the child, that the child needed immediate medical care, and that she would not be responsible. Sample then took the baby to the emergency room.

Dr. Stone, the physician who treated A.L.S. at the hospital described the left side of the baby's head to the jury as "quite obviously swollen," and looking very unusual. The swelling was obvious to a lay person. Dr. Stone reported that A.L.S.'s scalp appeared to have been swollen for sometime, consistent with having been swollen for a period of two days. X-rays revealed a fairly large, long skull fracture directly underneath the swollen area. Given the kind of fracture experienced by A.L.S., Dr. Stone opined that there would be noticeable swelling within an hour, if not in minutes. Dr. Luerssen, the child's pediatric neurosurgeon at Riley Hospital, agreed that swelling from a skull fracture of this type almost always begins immediately, because the swelling is related to bleeding from the bone itself. When Dr. Luerssen observed A.L.S. on January 2, 1991, the swelling was in resolution phase and diffuse, at that time about the size of his hand. He opined that initially the swelling would have been quite firm and localized, but would spread out over the course of days.

On cross-examination, Sample admitted that she had told the investigating officer that she knew the bump looked kind of funny, and that it had been swelling "day by day." The jury could also infer from Sample's testimony that she had responded affirmatively when asked by her sister whether she knew the baby had a big bump on her head and had stated that she intended to take the baby to Riley Hospital to have the bump examined when she took in her other daughter later the next month.

Hence, in addition to the circumstantial evidence of knowledge offered from the child's physicians that the child would have been exhibiting symptomatology of a seri-

ous injury and from Sample's sister that the child was behaving as if she was in pain at the time she took the child into her care, the record contains Sample's own admissions that she had observed changes in the bump after the fall and that she knew the injury needed medical attention. This is sufficient evidence to permit the jury to infer that Sample was aware of a high probability that by failing to obtain prompt medical treatment for her daughter, she was placing her child in a situation which endangered her life and health.

■ Sample also argues that the State failed to meet its burden of proving that she placed the child in actual or appreciable danger.[1] She points to testimony from the child's pediatric neurosurgeon that the delay in obtaining treatment for A.L.S. did not itself constitute an actual or appreciable threat to the child's life or health.

In order to convict a person under Ind. Code 35-46-1-4(a)(1), the State must prove that the actor subjected the dependent to a danger which was actual and appreciable. *State v. Downey* (1985), Ind., 476 N.E.2d 121, 123. However, this does not mean that a delay in seeking treatment must actually result in injury to the dependent. *Johnson v. State* (1990), Ind.App., 555 N.E.2d 1362, 1366. To hold otherwise "would require us to conclude that the legislature intended to engage in a roulette game whereby conduct or inaction with respect to the care of a child, albeit heedless or neglectful, could continue unchecked so long as it did not happen to harm the child." *Id.*

Both of the child's physicians testified that an injury to the skull of this seriousness posed a strong possibility of injury to the baby's brain underneath the fracture. Indeed, Dr. Luerssen testified that skull fractures are statistically associated with significant and potentially life threatening brain injury in babies. According to Dr. Luerssen, the most critical period of time

following the injury was the first twenty-four hours because that is the period during which the vast majority of complications will occur. Dr. Luerssen opined that during this time, there was an actual and appreciable threat of danger to the child. This evidence is sufficient to establish that Sample subjected the child to an actual and appreciable danger.

■ Sample also argues that the trial court committed reversible error by modifying her tendered instruction on circumstantial evidence. The trial court deleted that portion of the instruction which charged the jury that "[w]here proof of guilt is by circumstantial evidence only, it must be so conclusive in character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable theory of innocence."

As the case cited by Sample holds, an instruction of this nature "is required only if the evidence presented at trial was solely circumstantial." *Nichols v. State* (1992), Ind., 591 N.E.2d 134, 136. Direct evidence immediately establishes the main fact to be proved; circumstantial evidence immediately establishes collateral facts from which the main fact may be inferred. *Id.* at 136 (citing Herrick, Underhill's Criminal Evidence § 15 (1970 Supp.)). Cases based solely on circumstantial evidence typically involve situations where there are no witnesses to the alleged crime. Prosecutions resting on direct evidence tend to feature testimony from someone who actually saw the defendant commit the crime. *Id.*

Here, the State did offer some direct proof of the crime: Sample's own statements to the investigating officer that after the fall she saw the "bump" on the baby's head and that it grew day by day; her statements to her sister that she knew about the injury and that it should have medical care; and her own admission that she did not act. Hence, although the State offered a considerable amount of circum-

---

1. Sample argues that, because the State did not respond to her argument on this aspect of the sufficiency question, it is appropriate for us to apply a prima facie error standard. Even so, Sample must still demonstrate error, albeit pri-

ma facie error. *Gardner v. State* (1992), Ind. App., 591 N.E.2d 592, 593. As our analysis above demonstrates, Sample has not met this initial burden.

stantial evidence concerning the probable appearance of the injury to the baby's caretaker during the critical period, which independently proved knowing neglect, the jury need not resort to inference alone to conclude that Sample knew the bump suffered by the child deserved medical attention. A number of the witnesses observed this condition, including Sample herself. The State's evidence was thus not wholly circumstantial and Sample was not entitled to the benefit of an instruction which did not conform to the evidence.

■ Next, Sample argues that the trial court erred in admitting certain of her statements as admissions against her. But, we, like the State, find the basis of her argument to be less than clear. It seems to be Sample's argument, as the State suggests, that the statements were prejudicial to her because they reflected upon her truthfulness even before she had an opportunity to testify. We will not speculate about other possible grounds for exclusion not specifically argued.

> [A]ll evidence introduced in a trial is introduced for the purpose of influencing the verdict of the jury.... All evidence, if it influences the jury, is prejudicial to one side or the other. Hence, the mere objection that evidence is prejudicial is not a sufficient objection in itself.

*Wilson v. State* (1966), 247 Ind. 680, 684, 221 N.E.2d 347.

■ Lastly, Sample argues that when the State used the term "consciously" in rebuttal, the State introduced a new point in the case and she was entitled to respond to this point. She cites I.C. 35–37–2–2(4), which provides in pertinent part that

> the prosecuting attorney shall disclose in the opening all the points relied on in the case, and if in the closing [she] refers to any new point or fact not disclosed in the opening, the defendant or [her] counsel may reply to that point or fact, and that reply shall close the argument of the case.

Where the State's rebuttal is invited by comments made by defense counsel during closing arguments, the defense has no right under the statute to respond to the

rebuttal. *Goodman v. State* (1992), Ind., 588 N.E.2d 507, 508.

During closing argument, Sample's counsel asserted that the State was required to prove that Sample "knowingly—knowingly had an evil thought placed her child ... in a situation of appreciable danger." The State responded:

> Mr. Donovan said that if we are going to show knowingly we needed to show that Alice Sample had an evil mind. That's not it at all, it's not that we have to show that Alice Sample sat around and plotted ways to hurt her baby, that's not the issue, all right. Don't make this harder than what it is, knowingly just means that she consciously did something, did she consciously decide not to take the baby to the hospital when she knows it had a bump on its head....

The State's use of the word "consciously" was plainly a response to a misstatement of the law made by defense counsel. Defense counsel invited the comments and was not entitled to respond. But, even were we to assume that the use of the term "consciously" injected a new "point or fact" into the case, that the State rather than Sample injected the new point, and that Sample has properly preserved error, Sample has not shown us how she was harmed by the State's action. To obtain a reversal on appeal, the defendant must show that the complained of error affected her substantial rights. Ind.Trial Rule 61. Sample has not endeavored to meet this burden; accordingly, reversal is not warranted.

Judgment affirmed.

BAKER and CONOVER, JJ., concur.