**Shannon JONES, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–0406–CR–303.**

Court of Appeals of Indiana.

April 22, 2005.

Transfer Denied July 13, 2005.

---

Katherine A. Cornelius, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robyn M. Williamson, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Shannon Jones appeals his convictions for murder[1] and attempted murder as a class A felony.[2] Jones raises two issues, which we revise and restate as:

I. Whether the jury's determination that Jones was guilty but mentally ill was contrary to law; and

II. Whether the trial court erred by denying Jones's request for a surrebuttal closing argument.

We affirm.

The relevant facts follow. Jones lived in Indianapolis with his mother, Jenita Jones. Jones's seventeen-month-old daughter, A.J., was staying with him for the summer of 2000. As of July 8, 2000, A.J. had been staying with Jones for two weeks. In the early morning hours of July 8, Jones strangled A.J. to death with the belt of her bathrobe as she slept. Jones placed A.J.'s body in a drawer and closed it. Jones retrieved a gun he had bought three weeks prior. Jones wrapped his arm and the gun

in a pillow and some blankets so the neighbors would not hear, went to Jenita's bedroom, and shot her in the head twice. Jones grabbed Jenita's keys, emptied her purse, took her money, and left. Jenita survived the shooting.

Jones drove around looking for "weed" but was unable to locate any. Exhibit 47 at 85. Jones stopped at a convenience store and bought some cigarettes, a lighter, and a drink. Jones drove downtown and went to the City–County Building. Jones approached Marion County Deputy Sheriff Christopher Morgan and some other deputies who were near the Market Street entrance of the building and asked for a cigarette and a light. The deputies gave Jones a cigarette and a light, and Jones left.

Later that night, Jones entered the City–County building and laid down on a bench near the central desk. Marion County Sheriff Deputy Anthony Edgemon told Jones that he could not sleep there. Jones told Deputy Edgemon that he wanted to turn himself in and that he just killed two people. Jones said that he had to kill his mom because she would not give him his medication and that he killed A.J. because she had AIDS. Jones also told Deputy Edgemon that he was a prophet, that Jesus is the devil, and that he had AIDS, chlamydia, and genital warts. Deputy Edgemon noticed that Jones was very calm. Jones said that Deputy Edgemon was working for Satan and quit talking.

Indianapolis Police Detective Larry Cahill interviewed Jones. During the interview, Jones told Detective Cahill that he was not crazy, would not plead insanity, and knew that murder was wrong by "our laws." Transcript at 390. When Detec-

---

1. Ind.Code § 35–42–1–1 (1998) (subsequently amended by Pub.L. No. 17–2001, § 15 (eff. July 1, 2001)).

2. Ind.Code §§ 35–42–1–1, 35–41–5–1 (1998).

tive Cahill was not in the room with Jones, he did not notice anything unusual about Jones's behavior as he observed him from the opposite side of a one-way mirror.

On July 11, 2000, the State charged Jones with murder and attempted murder as a class A felony. Jones's attorney challenged his competency. On October 3, 2001, the trial court found Jones incompetent to stand trial and remanded him to the custody of the Mental Health Department. The trial court found Jones competent to stand trial on July 30, 2002.

Jones entered a plea of not responsible by reason of insanity. During Jones's trial, three doctors testified that Jones had schizophrenia and was insane at the time of the crimes, and several lay witnesses expressed opinions from which one could infer that Jones was sane. After the State concluded its closing rebuttal argument, Jones requested a surrebuttal, which the trial court denied. A jury found Jones guilty but mentally ill of both counts. The trial court sentenced Jones to serve fifty-five years for murder and twenty years for attempted murder concurrently.

## I.

■ The first issue is whether the jury's determination that Jones was guilty but mentally ill was contrary to law. The insanity defense is governed by Ind.Code § 35–41–3–6(a) (1998), which provides, "[a] person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense." "Mental disease or defect" is defined as "a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested only by repeated unlawful or antisocial conduct." Ind.Code § 35–41–3–6(b) (1998).

■ The "insanity defense" is an affirmative defense for which the burden of proof is on the defendant. *Thompson v. State*, 804 N.E.2d 1146, 1148 (Ind.2004). "The State must prove the offense, including mens rea, beyond a reasonable doubt but need not disprove insanity." *Id.* (citing Ind.Code § 35–41–4–1). To avoid responsibility for the crime proven by the State, the defendant must establish the insanity defense by a preponderance of the evidence. *See* Ind.Code 35–41–4–1(b). The question of whether a defendant can appreciate the wrongfulness of his conduct is one for the trier of fact. *See Thompson*, 804 N.E.2d at 1149. A defendant who claims that his insanity defense should have prevailed at trial is in the position of one appealing from a negative judgment, and we will reverse when the evidence is without conflict and leads only to the conclusion that the defendant was insane when the crime was committed. *Id.* As such, we will not reweigh the evidence or assess the credibility of witnesses but will consider only the evidence most favorable to the judgment and the reasonable and logical inferences to be drawn therefrom. *Id.*

■ Although expert "opinions provide a strong justification for raising the insanity defense, we have never held expert testimony to be conclusive." *Cate v. State*, 644 N.E.2d 546, 547 (Ind.1994). A jury is free to disregard the testimony of experts and rely upon that of lay witnesses. *Garner v. State*, 704 N.E.2d 1011, 1014 (Ind. 1998). Our supreme court recently held:

Conflicting lay testimony is not required, however, for the trier of fact to reject expert testimony. As a general rule, factfinders are not required to believe a witness's testimony even when it is uncontradicted. If judges and juries can disbelieve uncontradicted testimony

about facts, they are surely entitled to decide whether to accept or reject testimony that represents a witness's opinion.

*Thompson,* 804 N.E.2d at 1149.

We find *Barany v. State,* 658 N.E.2d 60 (Ind.1995), instructive and strikingly similar to the facts of this case. In *Barany,* the defendant was charged with murder and found guilty but mentally ill. *Id.* at 62. Our supreme court addressed the issue of "whether the verdict [was] contrary to law because the evidence was overwhelmingly and uncontroverted that appellant was insane at the time of the killing." *Id.* The defendant "discussed religion in highly abstract, incomprehensible terms and drew some bizarre pictures on a notepad." *Id.* Three disinterested psychiatrists concluded that the defendant "was incapable of appreciating the wrongfulness of his conduct and unable to conform his behavior to the requirements of the law." *Id.* at 63. Our supreme court held:

> In this case, the medical experts were unanimous in concluding that appellant was insane at the time of the killing. However, the State offered testimony from several lay witnesses that indicated that appellant was sane. Indiana State Police Detective Stotts described how, only a few hours after the crime, appellant talked about the victim's complaints and nagging. One of appellant's friends, Chris Brockman, testified as to unusual topics of conversation, such as conspiracies, but indicated that appellant "seemed O.K." In a conversation with his sister, appellant indicated that he believed that the victim was calling the police when he killed her. The jury could have decided that this testimony about appellant's behavior was more indicative of his actual mental health at the time of the killing than medical examinations conducted four weeks after

the arrest. Given this conflicting evidence, we will not invade the jury's fact-finding province.

*Id.* at 64.

Similar to the evidence in *Barany,* here, three doctors testified that Jones had schizophrenia and was insane at the time of the crimes, and several lay witnesses expressed opinions from which one could infer that Jones was sane. Officer Morgan testified that Jones was in "a very normal state" when he approached a group of deputies in front of the City–County Building and asked for a cigarette and a light. Transcript at 291. Deputy Edgemon testified that Jones was "very calm", "wasn't agitated" until Deputy Edgemon would not pay attention to him, "didn't appear to be under the influence of any kind of medication at the time," and "calmly talked about what happened." *Id.* at 263. Deputy Edgemon testified that Jones said he had killed his mother because she refused to give him his medication and had killed A.J. because she had AIDS. Detective Cahill testified that Jones did not exhibit any unusual behavior as he observed him on the opposite side of a two-way glass and that Jones's behavior did not cause him to be concerned about Jones's state of mind. Detective Cahill also testified that Jones told him that he was not "crazy" several times, that he would not plead insanity, and that he knew what he had done was wrong by "our laws." *Id.* at 390.

The State also directs us to Jones's conduct before, during, and after the crimes. Jones wrapped his arm and the gun with a pillow and some blankets before shooting Jenita so that his "neighbors wouldn't hear it" because he "had a plan." Exhibit 47 at 75. After the shooting, Jones took Jenita's keys and money and drove around looking for "weed." *Id.* at 85. Jones stopped at a convenience store and bought some cigarettes, a lighter, and a drink. Jones also

told Dr. Ingraham during his second competency test that he failed his first competency test on April 7, 2002, intentionally because he was not ready to leave. The jury heard the conflicting evidence, rejected Jones's insanity defense, and concluded that Jones was guilty but mentally ill. Given the conflicting evidence, we will not invade the jury's fact-finding province. *See, e.g., Barany*, 658 N.E.2d at 64.

## II.

The second issue is whether the trial court erred by denying Jones's request for a surrebuttal closing argument. Jones argues that: A) "the defense carries the burden of proof on insanity and thus should be able to sum up after the State concludes" under Jury Rule 27; and B) the State raised additional points in its second closing argument. Appellant's Brief at 17.

### A. Burden of Proof

■ Ind.Code § 35–37–2–2(4) governs counsels' arguments and provides in pertinent part:

When the evidence is concluded the prosecuting attorney and the defendant or his counsel may, by agreement in open court, submit the case to the court or jury trying the case, without argument. If the case is not submitted without argument, the prosecuting attorney shall have the opening and closing of the argument. However, the prosecuting attorney shall disclose in the opening all the points relied on in the case, and if in the closing he refers to any new point or fact not disclosed in the opening, the defendant or his counsel may reply to

that point or fact, and that reply shall close the argument of the case.

Indiana Jury Rule 27,[3] which governs final arguments, provides, in pertinent part:

If the parties argue the case to the jury, the party with the burden of going forward shall open and close the argument. The party which opens the argument must disclose in the opening all the points relied on in the case. If, in the closing, the party which closes refers to any new point or fact not disclosed in the opening, the adverse party has the right to reply to the new point or fact. The adverse party's reply then closes the argument in the case.

\*     \*     \*     \*     \*     \*

In criminal cases, the party with the burden of going forward is the prosecution. In civil cases, the party with the burden of going forward is the plaintiff.

We find *Green v. State*, 469 N.E.2d 1169, 1172 (Ind.1984), instructive. In *Green*, the defendant argued that she had the burden of proof on the issue of insanity and that she "should have been allowed to present her statements, evidence, and argument in the order requested." *Id.* Our supreme court held that her argument failed because: 1) Ind.Code § 35–37–2–2 provides that the prosecuting attorney has the privilege to open, to present his evidence first, and to have the opening and closing arguments; and 2) "although [d]efendant did bear the burden of proof on the insanity issue, the State had the ultimate burden of proving that the defendant knowingly or intentionally killed [the victim]." *Id.*

---

**3.** Jones refers us to "Marion County Jury Rule 27." Appellant's Brief at 15–18. However, we cannot find "Marion County Jury Rule 27" in either the 2004 Indiana Rules of Court or the Marion County Clerk's website. *See* http://www6.indygov.org/courts/ (last visited April 6, 2005). Indiana Jury Rules "shall govern petit jury assembly, selection, and management in all courts of the State of Indiana." Indiana Jury Rule 1. Further, the quoted portion of Marion County Jury Rule 27 in Jones's brief is substantially similar to Indiana Jury Rule 27. Thus, we will examine Jones's argument under Indiana Jury Rule 27, which he appeared to quote in his brief when he referred to Marion County Jury Rule 27.

We also find *Sills v. State*, 463 N.E.2d 228, 233 (Ind.1984), *overruled on other grounds by Wright v. State*, 658 N.E.2d 563, 569–570 (Ind.1995), instructive. Jones argues that "a close reading [of *Sills* ] reveals [our supreme court] dealt most with a refusal to change the order of submission of evidence." Appellant's Brief at 16. We disagree. Our supreme court addressed the issue of whether a defendant "should be allowed to open and close." *Id.* Our supreme court found no error in the trial court's refusal to grant defendant's "Motion to Present Evidence First and Open and Close Argument" and held:

> The defendant contends that insanity proceedings are civil in nature, and therefore, since the defendant bears the burden of proof, he should be allowed to open and close and to present evidence first. It is true that the burden of proof in insanity proceedings is the civil standard rather than the criminal. But this does not talismanically transform the entire criminal proceeding into a civil one. Insanity is a defense and defenses are offered after the state has offered evidence to support the prosecution.

*Id.* Accordingly, here, the fact that Jones bore the burden of proof on the insanity issue does not transform the case from a criminal case into a civil case. Because the case is still criminal, "the party with the burden of going forward is the prosecution" and the State "shall open and close the argument." Indiana Jury Rule 27.

### B. Surrebuttal

■ Jones argues that he was entitled to surrebuttal because the State's final section of closing argument raised additional points not raised in the first part of the argument. The State argues that Jones waived this argument on appeal. "Failure to object to prosecutorial comments in a timely fashion results in waiver." *Cox v. State*, 696 N.E.2d 853, 860

(Ind.1998) (relying on *Cox v. State*, 475 N.E.2d 664, 670 (Ind.1985)). "An objection to prosecutorial comments is untimely when raised after the State has concluded its final argument." *Cox*, 696 N.E.2d at 860 (relying on *Cleary v. State*, 663 N.E.2d 779, 782 (Ind.Ct.App.1996) (citing *Pavone v. State*, 273 Ind. 162, 167, 402 N.E.2d 976, 979 (1980)).

The following exchange occurred after the State concluded its closing rebuttal argument:

> MR. HILL: Since I have the burden of proof on the issue of insanity I should logically get to make surrebuttal on that issue only. And it's the burden of proof that gives rise to the State being able to go first and last. So I'm making that
> . . .
> THE COURT: It had occurred to me earlier, that's also why I announced it to the jury so at that time you could make this request if you wished because I wanted Ms. Crawford to know that that was going to happen so she could proceed in that way. You have waited too long to make the request.

Transcript at 787. Jones did not request a surrebuttal until after the State had concluded its closing rebuttal argument. Accordingly, Jones's claim is waived. *See, e.g., Cox*, 696 N.E.2d at 860.

■ Waiver notwithstanding, we will address Jones's arguments. Jones argues that additional points were made in the State's final section of closing argument that were sufficient to warrant Jones's attorney to make additional argument. Ind. Code § 35–37–2–2(4) provides, in pertinent part:

> If the case is not submitted without argument, the prosecuting attorney shall have the opening and closing of the argument. However, the prosecuting attorney shall disclose in the opening all

the points relied on in the case, and if in the closing he refers to any new point or fact not disclosed in the opening, the defendant or his counsel may reply to that point or fact, and that reply shall close the argument of the case.

Where the State's rebuttal is invited by comments made by defense counsel during closing arguments, the defense has no right to respond to the rebuttal under Ind.Code § 35–37–2–2(4). *Goodman v. State*, 588 N.E.2d 507, 508 (Ind.1992). The State argues that the comments Jones challenges "were made in response to points raised in his closing argument." Appellee's Brief at 9. Jones argues that the following points were raised for the first time in the State's rebuttal: 1) types of treatment and the likelihood of release; 2) Jones's significant antisocial disorder and tendency to ignore rules and regulations; 3) conflicting testimony about whether Jones was dangerous; and 4) the number of patients Dr. Ingraham treated at the Logansport facility and the number of beds. We will address each in turn.

### 1. Types of Treatment and the Likelihood of Release

Jones argues that the State raised, for the first time on rebuttal, the types of treatment and the likelihood of release if he was not sent to the Department of Corrections. During closing argument, Jones's counsel asserted:

Instruction 21–C, 21–C, when the defendant is found not responsible by reason of insanity at the time of the crime the prosecuting attorney must file, they have to, a written petition for indefinite mean? Dr. Ingraham told you that in his experience in Virginia and in Colorado as a forensic psychologist was working with people who have been found not guilty by reason of insanity was two states [sic], that he frequently treated

people who had been in the mental institution more than twenty to thirty years. That sounds like indefinite to me. Twenty and thirty years defines the word indefinite. If after the hearing the court determines the defendant is a threat to himself or others the defendant must be, not could be, must be committed to an appropriate facility, facility, in that State of Indiana that's Isaac Ray, and he told you how confining that was, and the double fencing, and the double doors, the locked wards, it's not permissive, it's mandatory, must be, and that is 21–C, that is the law.

Transcript at 775. The State responded:

And when he says appropriate facility, you heard Dr. Schuster talk about community centers, where it's the defendant's responsibility to go there. You heard them talk about indefinite commitment, and I agree, think about what that means, the word indefinite.

Transcript at 781. Defense counsel invited the comments by addressing the types of treatment and the likelihood of release and, therefore, was not entitled to respond. *See, e.g., Sample v. State*, 601 N.E.2d 457, 461 (Ind.Ct.App.1992) (holding that defense counsel invited the comments and was not entitled to respond).

### 2. Antisocial Disorder and Tendency to Break the Rules

Jones also argues that the State argued for the first time in its rebuttal that Jones had a significant antisocial disorder, raised situations from Jones's past to argue he suffered from an antisocial personality, and argued that Jones ignored the rules and regulations "and it was his defiance that caused him to kill his daughter and injure his mother." Appellant's Brief at 17. During closing argument, Jones's counsel asserted:

And remember, please, this is not a person making choices, she talked about choices, this is not a person making choices with a clean slate like you and I would, this is about a person making choices with a damaged slate. He was making choices with a thought disorder, something that are command hallucinations, knowing it's the prophet Cyrus and that you, and you and you aren't following. Now, he made a choice to pull the trigger. He made a choice to strangle his daughter, but it was a choice driven by his delusional psychotic thought process. That was the testimony of the court's doctors and my doctor. And that evidence was not refuted. They did not bring anyone in here to say anything contrary about that other than wanting to say choice, but you've got to keep in mind it's choice governed by that mind and that mind was diseased.

Transcript at 765. The State responded:

[Y]ou heard a lot from all three doctors about his conduct. Now you heard from Dr. Schuster that he had schizophrenia paranoid type and a significant antisocial personality disorder. You heard the same thing from Dr. Olive, but you didn't hear that from Dr. Ingraham, not at least in his 2003 evaluation, the one he made after he was paid by the defense. In the one that he made in 2002 in August he said there was a significant personality disorder on the part of the defendant. And he went through a whole laundry list of all of the different kinds of acts of antisocial behavior and we're not talking about when he was a kid, and we're not talking about when he was less than eighteen. He was 21 years old and he was a grown man. But Dr. Ingraham said, oh, no, in 2003 these are personality vulnerabilities. In 2002 after seven months of talking to him at least once a week and pages and pages of progress notes is a significant antiso-cial disorder. Honesty. Now he talked about Fairbanks a little bit and the defendant, that he didn't get the aftercare, why didn't he get the aftercare. It wasn't because it wasn't available. It wasn't because he couldn't, he chose not to. He chose not to follow the rules at his home. He was even willing to go so far to sit in a facility for an hour with his mother refusing to go to the restroom in order to take a urine test because he wasn't going to let her prove that he was not telling the truth about ingesting marijuana. He couldn't follow the rules and regulations when he was a grown man at Logansport. Fights, violent towards other patients. In that statement that you saw, that you looked at, all three parts of it, in that last part when Detective Cahill was talking to the defendant strongly, he said I knew what I was doing was against the law but that's your law not God's law. So just as he ignored the rules and regulations in school, he ignored the rules and regulations at his mother's home, he ignored the rules and regulations at Logansport, he ignores the laws that we choose to live by, they aren't important to him.

*Id.* at 781–783. Jones's defense counsel invited the State's comments by commenting on Jones's "thought disorder" and choices that he has made. Transcript at 765. Therefore, he was not entitled to have his counsel present a surrebuttal. *See, e.g., Sample,* 601 N.E.2d at 461.

### 3. Conflicting Testimony

Jones contends that the State argued for the first time on rebuttal that the professionals disagreed about whether Jones was dangerous. Jones's counsel invited the argument when he argued in his closing, "[t]wo of the doctors said he was a danger to either himself or others, okay." Transcript at 773. Because, the defense invited

the State's argument that the professionals disagreed about whether Jones was dangerous, we cannot say that the trial court erred by refusing to allow Jones's counsel to present a surrebuttal. *See, e.g., Sample,* 601 N.E.2d at 461.

### 4. Number of Patients

Jones also contends that the State raised a new point regarding the number of patients Dr. Ingraham saw in Indiana. Jones argued:

> Dr. Ingraham told you that in his experience in Virginia and in Colorado as a forensic psychologist working with people who have been found not guilty by reason of insanity was two states, that he frequently treated people who had been in the mental institution more than twenty to thirty years.

Transcript at 775. In closing argument, the State argued:

> Dr. Ingraham, their doctor, is the only one who goes on and on about him being in there twenty or thirty years. And Dr. Ingraham was here for three and a half years and only saw one person in a hospital in Logansport for any period of time. One person that had been found not responsible by reason of insanity, one. And there are sixty-six beds for the whole State of Indiana, sixty-six beds for all of the 92 counties that there are in this State.

Transcript at 784. We find that defense counsel invited the State's comments by addressing Dr. Ingraham's experience and was not entitled to respond. *See, e.g., Sample,* 601 N.E.2d at 461.

In summary, the record shows that the alleged new points were responses to Jones's final argument. The trial court did not abuse its discretion by denying Jones a surrebuttal closing argument. *See, e.g., Hughes v. State,* 508 N.E.2d 1289, 1299 (Ind.Ct.App.1987) (holding that trial court did not abuse its discretion by denying surrebuttal because the State's arguments were responses to the defendant's closing argument).

 Even assuming the State's arguments were not responses to Jones's final argument, to obtain a reversal on appeal, Jones must show that the complained of error affected his substantial rights. Ind. Trial Rule 61.[4] Jones has failed to show, and we cannot say, that the trial court's denial of Jones's request for surrebuttal closing argument violated his substantial rights. *See, e.g., Worthington v. State,* 273 Ind. 499, 504, 405 N.E.2d 913, 917 (Ind. 1980) (holding that the prosecutor's comments did not violate defendant's substantial rights or contribute to the conviction because the jury had heard the witness's testimony and other testimony as to her credibility and it was free to draw its own conclusions), *cert. denied,* 451 U.S. 915, 101 S.Ct. 1991, 68 L.Ed.2d 306 (1981).

For the foregoing reasons, we affirm Jones's convictions for murder and attempted murder as a class A felony.

Affirmed.

BAKER, J. and FRIEDLANDER, J. concur.

---

4. Ind. Trial Rule 61 provides, in pertinent part, "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."