# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 02 2019, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief
Criminal Appeals
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Walker L. Whatley, II, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 2, 2019 <br><br> Court of Appeals Case No. <br> 18A-CR-2182 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Alicia A. Gooden, Judge <br><br> The Honorable Richard E. Hagenmaier, Commissioner <br><br> Trial Court Cause No. <br> 49G21-1804-F5-12499 |

**Bailey, Judge.**

# Case Summary

[1] Walker L. Whatley, II ("Whatley") appeals his conviction for Possession of Cocaine, as a Level 6 felony.[1] We affirm.

# Issues

[2] Whatley presents two issues for review:

I. Whether he was entitled to a mistrial because of purposeful discrimination in the jury selection; and

II. Whether he was entitled to a mistrial because the State argued new contentions in rebuttal, but Whatley was denied the opportunity to present surrebuttal argument.

# Facts and Procedural History

[3] On April 14, 2018, a woman who identified herself as Lashona Ealy called 9-1-1 and reported that Whatley had shot at her before boarding an Indianapolis IndyGo bus at 42nd Street and Post Road. Indianapolis Metropolitan Police Department officers detained the bus on which Whatley had been a passenger. Whatley exited quickly, but officers grabbed and handcuffed him. Officers saw him attempting to crush a baggie into the ground with his shoe. Officers seized the baggie; subsequent testing revealed that it contained .0064 grams of cocaine.

---

[1] Ind. Code § 35-48-4-6(a).

Bus passengers called out that Whatley had left something behind, and the officers recovered two handguns from the bus.

[4] The State charged Whatley with Carrying a Handgun Without a License[2] and Possession of Cocaine, each as a Level 5 felony. Whatley was tried before a jury on July 26, 2018. As to the handgun charge, Whatley testified and presented a defense of necessity, claiming that one or more persons at the residence from which he fled had struck him and attempted to rob him. He presented evidence of having a black eye when he was arrested. Whatley denied that the cocaine was his. He was acquitted of the handgun offense and found guilty of Possession of Cocaine, as a Level 6 felony, a lesser-included offense of the charged offense. On August 15, 2018, Whatley was sentenced to time served, 240 days. He now appeals.

# Discussion and Decision

## Mistrial Standard of Review

[5] A mistrial is an extreme remedy appropriate only when other remedial measures are insufficient to rectify the situation. *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001). A trial judge has discretion in determining whether to grant a mistrial and his or her decision is afforded great deference because the trial judge "'is in the best position to gauge the surrounding circumstances of an

---

[2] I.C. § 35-47-2-1.

event and its impact on the jury."' *Id.* (quoting *Gregory v. State*, 540 N.E.2d 585, 589 (Ind. 1989)). To prevail on appeal from the denial of a motion for mistrial, an appellant must establish that the questioned conduct '"was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected."' *Id.* The gravity of the peril is determined by consideration of the misconduct's probable persuasive effect on the jury's decision, rather than the impropriety of the conduct. *Id.*

## *Batson* Violation

[6] During voir dire, Whatley's counsel objected to the State's use of peremptory challenges to exclude some potential jurors who were, like Whatley, African-American, and Whatley claimed that the State had selectively questioned a potential juror about medical issues and child care. The trial court stated that race-neutral reasons had been provided and overruled any objection "at this time." (Tr. Vol. II, pg. 49.) The jury was impaneled, consisting of three African-American jurors, nine others, and one African-American alternate juror. The jury was then excused, and the trial court heard argument of counsel regarding compliance with *Batson v. Kentucky*, 476 U.S. 79 (1986). Whatley's motion for a mistrial was denied.

[7] The use of a peremptory challenge to strike a potential juror solely based on his or her race violates the Equal Protection Clause of the Fourteenth Amendment to the United States. *Jeter v. State*, 888 N.E.2d 1257, 1262 (Ind. 2008) (citing

*Batson*, 476 U.S. at 79)). *Batson* adopted a procedure to be implemented for claims of discrimination in the exercise of peremptory challenges:

> First, the party contesting the peremptory challenge must make a prima facie showing of discrimination on the basis of race. Second, after the contesting party makes a prima facie showing of discrimination, the burden shifts to the party exercising its peremptory challenge to present a race-neutral explanation for using the challenge. Third, if a race-neutral explanation is proffered, the trial court must then decide whether the challenger has carried its burden of proving purposeful discrimination.

*Killebrew v. State*, 925 N.E.2d 399, 401 (Ind. Ct. App. 2010) (citation omitted), *trans. denied*. The trial court's decision regarding whether a peremptory challenge was discriminatory is given great deference on appeal and will be set aside only for clear error. *Id.*

[8] The trial court summarized the selection process as follows:

> [On the first round,] the State did strike five jurors. … And those five people are all black. They did not strike nor did the Defense strike Prospective Juror [12], who is black. … On the second round the State struck three people. One of which was black[.] … And then in round 3, the State had no strikes. The Defendant struck the third white Prospective Juror with the white juror, number 3. So Prospective Juror [X] who is black is the alternate juror.

(Tr. Vol. II, pg. 79.)

[9] "Standing alone the removal of some African-American jurors by peremptory challenge does not raise an inference of discrimination." *Hardister v. State*, 849

N.E.2d 563, 576 (Ind. 2006).[3]  Even so, the trial court proceeded as if Whatley had made a prima facie showing of discrimination and considered the State's explanations for the use of peremptory challenges.  That is, some potential jurors appeared to the prosecutor to be reluctant to engage in voir dire – staring blankly when questioned, providing a one-word response, or remaining quiet.  One potential juror had attended Church with Whatley.  Two had served on juries where the trials culminated with not guilty verdicts.

[10]  As for alleged disparate questioning, the prosecutor explained that one African-American had been questioned as to whether he could serve despite a medical condition and child care responsibility because:

> on his questionnaire that was listed as a specific reason he
> thought he might not be able to serve was picking up children,
> and seizures which is different than the other medical issues
> listed by potential jurors today.  And if someone's going to have
> some reason to struggle with seizures today in the jury, I want to
> know about that ahead of time.  That's why I specifically [asked]
> about his medical condition and he put them together as issues
> for not be[ing] able to serve.  After answering them, I was pleased
> with the answers I guess you could say and we did not move to
> strike that jury pole member.

(Tr. Vol. II, pg. 81.)

---

[3] There, the State had used five of its six peremptory strikes to strike African-American prospective jurors. However, the State did not strike two African-Americans, one of whom was struck by the defendant.

[11]     The trial court concluded:

> Third stage, we've gone through the first two stages where I did ask for a race neutral [reason]. Third stage is in light of the parties' submissions; the Court must determine whether Defendant has shown purposeful discrimination. I find that the Defendant has not made that burden. There are four black jurors on the jury as a whole[.] … I do not see anything in this case to rise to the level of a showing that his constitutional rights have been violated at this point.

*Id.* at 83. Whatley has not shown clear error in this determination. Nor has he shown that he was placed in a position of grave peril, such that a mistrial should have been granted.

# Surrebuttal

[12]     Indiana Code Section 35-37-2-2(4) provides in part:

> If the case is not submitted without argument, the prosecuting attorney shall have the opening and closing of the argument. However, the prosecuting attorney shall disclose in the opening all the points relied on in the case, and if in the closing he refers to any new point or fact not disclosed in the opening, the defendant or his counsel may reply to that point or fact, and that reply shall close the argument of the case.

Similarly, Indiana Jury Rule 27 provides that the party which opens the argument must disclose in the opening all the points relied on in the case and if, in closing, the party which closes refers to a new point or fact not disclosed in the opening, the adverse party has the right to reply to the new point or fact.

[13]     After the State concluded its arguments, Whatley claimed that the prosecutor – by presenting a brief opening statement but making new points in rebuttal argument – had "sandbagged" the defense and Whatley should be afforded a response in surrebuttal. (Tr. Vol. II, pg. 243.) According to Whatley, the State improperly referred to Whatley's flight as consciousness of guilt, newly elaborated upon the facial bruising and 9-1-1 call, and should not have claimed that Whatley "only did the right thing [laying down the gun] when the cops showed up." (Tr. Vol. II, pg. 243.)

[14]     Where, as here, surrebuttal is not requested until after the State concludes its closing rebuttal argument, the claim is waived. *Jones v. State*, 825 N.E.2d 926, 932 (Ind. Ct. App. 2005), *trans. denied*. Waiver notwithstanding, we find no reversible error. The State claims that it was merely responding to points raised by Whatley in his closing. Such is permissible in rebuttal argument. *See id.* at 933. Nonetheless, Whatley had freely admitted that he fled onto a city bus and the other challenged references concern the handgun charge of which Whatley was acquitted. Indiana Appellate Rule 66(A) provides that an error is not grounds for reversal where its probable impact "is sufficiently minor so as not to affect the substantial rights of the parties." Whatley did not demonstrate his entitlement to a mistrial on this basis.

# Conclusion

Whatley has not persuaded us that either purposeful discrimination in jury selection or the denial of surrebuttal placed him in grave peril such that a mistrial was warranted.

Affirmed.

Riley, J., and Pyle, J., concur.